58524. CASEY v. CARROLLTON FORD COMPANY.

QUILLIAN, Presiding Judge.

Fite H. Casey, Jr., one of the three defendants below, appeals from the findings and judgment of the trial court. Carrollton Ford Company accepted a check for the purchase of two automobiles made on the corporate checking account of "Casey Enterprises, Inc.," and signed by "Fite H. Casey, Jr." The check was made out to "Wheels Limited" and endorsed by "Matt Mattingly." Mattingly did business as "Wheels Limited" and had taken possession of the two vehicles. The check was returned for insufficient funds. After collection efforts of Carrollton Ford's attorney, Reuben Word, were unsuccessful, this action was brought against Casey, Casey Enterprises, and Mattingly. Casey alone appeals from a judgment against all three defendants. *Held:*

1. We will consider enumerations of error 1 and 2 together in this division. In his first enumeration Casey complains that the evidence was insufficient to establish that he was an officer, director, or agent of Casey Enterprises, Inc. Conversely, in his second enumeration he alleges the court erred in finding he was acting on behalf of himself. However, he argues in his second enumeration that "it is clear that Casey, was acting as agent for Casey Enterprises and not, as is set forth in the trial court's findings of fact number six, acting on behalf of himself." Because Casey Enterprises, Inc. did not appeal,

it is immaterial whether Casey was acting as agent for the corporation. The only material issue on this appeal by Casey is whether he was liable individually.

As a legal entity, a corporation is separate and distinct from its officers, stockholders, and agents. *Keller Bldg. Products v. Young,* 137 Ga. App. 682 (1) (b) (224 SE2d 815). The legal advantage of incorporation being the limited liability of its stockholders. See 6 EGL 179, 189, Corporations, §§ 6 and 13. Thus, owners of corporations restrict personal liability by acting only as an agent of the corporation. However, "[u]sing such expressions as 'piercing the corporate veil,' or 'looking at the substance rather than at the form,' or 'disregarding the corporate fiction,' the courts are constantly demonstrating a willingness to disregard the separateness of the entity of a corporation where such corporation has overextended its privileges in the use of the corporate entity to defeat justice, to perpetrate fraud, or to evade statutory, contractual or tort responsibility." Kaplan's Nadler, Ga. Corporation Law 81-82, § 3-14; See also 6 EGL 187.

"Courts permit 'piercing the corporate veil' 'in situations where the parties involved have themselves disregarded the separateness of legal entities by a commingling and confusion of properties, records, control, etc.' Kaplan's Nadler, Ga. Corporation Law 99, § 3-21; 6 EGL 187." *Bone Const. Co. v. Lewis,* 148 Ga. App. 61, 63 (250 SE2d 851)."Under such circumstances, the court may disregard the corporate entity." Kaplan's Nadler, Ga. Corporation Law 100, § 3-21; See also 46 ALR3d 428, 431. Stockholder's Personal Conduct of Operations or Management of Assets as Factor Justifying Disregard of Corporate Entity.

In the instant case, Casey testified he had loaned Mattingly money in the past and had been paid back. Mattingly testified that when he received this check from Casey he considered this to be a loan as it "is not unusual for me to go and borrow $10,000.00; $15,000.00 from him at any given time and with no questions asked. Of course, I pay him interest on the money." Thus, it is clear from this testimony that Casey and Mattingly considered the money represented by the check to be a personal loan and

not a corporate transaction. Casey admitted he was the maker and it was his signature on the check. His personal signature does not reflect he signed as an agent or officer of the corporation. Our Code provides that an authorized representative of a corporation who signs his own name to a corporate check "is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity." Code Ann. § 109A-3 — 403 (2) (b) (UCC § 109A-3 — 403 (2) (b); Ga. L. 1962, pp. 156, 257). "In the absence of proof that the signature was made as a representative, the provisions of Code Ann. § 109A-3 — 403 (2) (b) apply. The inescapable result is personal liability." *Seamon v. Acree,* 142 Ga. App. 662, 663 (236 SE2d 688); Accord, *Colonial Film &c. Co. v. MacMillan Professional Magazines,* 148 Ga. App. 632 (2) (252 SE2d 61); 2 Anderson, Uniform Commercial Code 916-917, § 3-403:14.

Thus, in view of the fact that the testimony of Casey and Mattingly evidenced a private as opposed to a corporate transaction, and the lack of any showing that Casey signed as a corporate representative, the finding of the trial court as to the personal liability of Casey, as the maker of the check, is amply supported by the evidence. These enumerations of error are without merit. *Pickett v. Paine,* 230 Ga. 786, 791 (199 SE2d 223).

2. The third enumeration avers the court erred in finding Casey liable as there was no evidence that he participated in any fraud upon Carrollton Ford. We do not agree. Mr. Reuben Word, plaintiff's attorney, testified that he spoke to Casey about payment of the amount represented by the check he had given Carrollton Ford. Casey stated to him "that he had given that check to Mr. Mattingly in order for him [Mattingly] to obtain the titles to the [two] cars, and he had not intended for it to be paid."

After hearing the conflicting testimony by the attorney that Casey admitted he gave the check to Mattingly to obtain the titles to the cars and the testimony of Casey and Mattingly that the check represented a loan, the trial court stated: "I think there is a little bit more to it than just a holder in due course and a maker of a check . . . Mr. Casey took the stand and said

that yes, he wrote the check, he gave Mr. Mattingly a loan, that he very often makes a loan. On the other hand, testimony is from Mr. Word that Mr. Casey said the reason he gave the check was simply to get title and it wasn't a loan. Now I have got to find out which is most logical to believe here. Now, if Mr. Casey intended to make a loan to Mr. Mattingly, the check would have cleared . . . He wouldn't say, all right, Mr. Mattingly, I'm going to make you a loan and then give him a bad check. He would simply say, in the first place, I don't have the money. Therefore, using that logic, the Court has to find as a finding of fact, that Mr. Casey did tell Mr. Word that he gave the check simply in order for Mr. Mattingly to get the titles."

The finding of the trial court is not "clearly erroneous" and is supported by the evidence of record. Accordingly, no reason for reversal is found. *Doyal Development Co. v. Blair,* 137 Ga. App. 434 (224 SE2d 55); *Yalanzon v. Sharon Const. Co.,* 141 Ga. App. 294 (2) (233 SE2d 220).

3. For the foregoing reasons it was not error for the trial court to deny defendant's motion for new trial.

*Judgment affirmed. Smith and Birdsong, JJ., concur.*

SUBMITTED SEPTEMBER 12, 1979 — DECIDED OCTOBER 30, 1979.

*Thomas O. Duvall, Jr., Gerald Alan Benda,* for appellant.

*Ernest J. Nelson, Jr., Charles H. Hyatt,* for appellee.